

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

August 19, 2008

**VIA ELECTRONIC FILING**

The Honorable Sue L. Robinson
United States District Court
   for the District of Delaware
844 King Street
Wilmington, DE 19801

      Re:   **Callaway Golf Company v. Acushnet Company**
             **C.A. No. 07-367-SLR**

Dear Judge Robinson:

      At the August 5th discovery conference, the Court requested that the parties provide a letter regarding two topics: (1) counsel for Callaway's instructions not to answer during the deposition of the Callaway attorney who prosecuted the Callaway patents-in-suit; and (2) Callaway's objection to Acushnet's expert, Mr. Frank Thomas, having access to Callaway's confidential information. In addition, the Court requested that Callaway produce its frequency testing data for an *in camera* review to determine whether it constitutes work product, and if so, whether Acushnet has a substantial need for that information.

**Callaway's Prosecuting Attorney**

      Callaway's counsel instructed its prosecuting attorney not to answer questions about the prosecution of the Callaway patents-in-suit because those answers may reflect his "mental impressions." Callaway has not claimed, however, that the prosecution of the Callaway patents-in-suit was done in anticipation of litigation.[1]

      During the discovery conference, the Court requested that the parties provide their best authority regarding whether an accused infringer is limited to the public record in proving inequitable conduct. Acushnet points the Court to *Alcon Laboratories, Inc. v. Pharmacia Corp.*,

---

[1] It is clear that the "mere possibility" that litigation may arise from a patent is insufficient to invoke the work-product privilege. *See, e.g., Stryker Corp. v. Intermedics Orthopedics Inc.*, 24 U.S.P.Q. 2d 1676, 1677 (E.D.N.Y. 1992) ("This court rejects the theory that litigation is a 'possibility' in every patent application.").

225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002), in which the district court noted that a "prosecuting attorney's mental impressions are ***crucial*** to any claim of inequitable conduct in a patent infringement action."[2] Acushnet is not aware of any authority that limits a defendant to proving inequitable conduct through the public record. To the contrary, it appears that courts, including the *Alcon* court, routinely permit defendants to take the deposition of the prosecuting attorney to obtain information regarding materiality and intent.[3]

**Mr. Thomas**

Callaway has objected to one of Acushnet's experts, Frank Thomas, having access to confidential Callaway information. Callaway specifically objected to Mr. Thomas having access to such confidential information because he may be involved in consulting with other companies regarding the design of drivers at a future date.

After the discovery conference, Acushnet attempted to compromise with Callaway by agreeing to limit Mr. Thomas' access only to Callaway documents that reflect tests of third party, prior art golf clubs, and not Callaway's confidential design documents. This compromise addressed Callaway's stated concern that Mr. Thomas not have access to Callaway's design documents. Callaway objected to this proposal because (1) Acushnet has identified several Callaway clubs as alleged prior art, and Callaway objects to Mr. Thomas seeing confidential documents regarding the design of those clubs; (2) documents involving discussions of prior art clubs are likely to also contain information regarding the design of Callaway clubs; and (3) it would be impractical for Callaway to have to review every document Acushnet proposes to show Mr. Thomas in order to ensure that he is not exposed to confidential design information.

Acushnet believes that Callaway's continuing objections are not supportable, and that Acushnet's proposal alleviates any concerns that Callaway may legitimately possess. In further support of this proposition, with regard to Callaway prior art clubs, Acushnet agrees to limit Mr. Thomas' access only to frequency test results, which shall not include any design documents with regard to those clubs. Acushnet believes that this compromise, coupled with Mr. Thomas' agreement to be bound by the Protective Order in this case, is sufficient to permit Mr. Thomas to have access to the limited universe of Callaway's confidential information proposed. Nonetheless, Mr. Thomas is available to testify before the Court on this issue if given reasonable notice.

---

[2] 225 F. Supp.2d 340, 344 (S.D.N.Y. 2002) (emphasis added) (citing *Environ Products, Inc. v. Total Containment, Inc.*, 41 U.S.P.Q.2d 1302, 1306 (E.D. Pa. 1996)).

[3] *See, e.g. Genal Strap, Inc. v. Dar*, 2006 WL 525794 at *2 (E.D.N.Y. 2006) (citing cases).

The Honorable Sue L. Robinson
August 19, 2008
Page 3

**Frequency test results**

Callaway's patents broadly claim a golf club head having a striking plate natural frequency within a range of 2,800 to 4,500 Hz.[4] To support these claims, the specification of each of these patents states that, based on experimental testing, "currently available driver golf club heads have striking-face natural frequencies greater than 4,500 Hz."

Acushnet has made substantial claims of invalidity and inequitable conduct in this case. (*See* D.I. 78.) At the core of these defenses is the fact that numerous prior art drivers had striking plate natural frequencies less than 4,500 Hz, and that Callaway was aware of these golf clubs prior to filing its patents, but did not cite them to the PTO. Indeed, Acushnet already is aware of two clubs that may fall into this category. Callaway, however, refuses to permit any discovery into the frequency testing it conducted prior to the filing of its patents, including the club models and the results, making it impossible for Acushnet to ascertain what Callaway knew prior to the filing of its patents. It is critical that Acushnet not only learn *the results* of the frequency tests being withheld by Callaway, but also learn *when and how Callaway itself knew* of those results. Callaway's knowledge of the uncited prior art is a critical element to Acushnet's inequitable conduct case, and is a proper subject of inquiry.[5]

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH/nmt/879103/31957

cc:   Clerk of the Court (via hand delivery)
      Counsel of Record (via electronic filing)

---

[4]   The non-asserted claims claim a range from 2,800 to 8,500 Hz.

[5]   *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) (proving inequitable conduct requires showing "knowledge chargeable to the application of that prior art and of its materiality").